United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Andrew Hayes,

        Plaintiff,

   v.

City & County of San Francisco, et al.,

        Defendants.

_____/

No. C 06-3510 MJJ  (JL)

**REPORT AND RECOMMENDATION
RE MOTION TO DISQUALIFY
CITY ATTORNEY'S OFFICE
(Docket # 60)**

**Introduction**

    Plaintiff's motion to disqualify the City Attorney's Office from representing Defendants in this action was referred by the district court (Hon. Martin J. Jenkins) for Report and Recommendation as provided by 28 U.S.C. §636(b) and Civil Local Rule 72. The discovery cut-off in this case is June 29, 2007. A settlement conference is scheduled for September 6. Jury Trial is set for October 15. This Court held a hearing on the motion to disqualify. Appearing for Plaintiff was Philip Steven Horne, LAW OFFICES OF PHILIP STEVEN HORNE. Appearing for Defendants was Michael Leon Guerrero, Deputy City Attorney. The Court carefully considered the moving and opposing papers, the record, and the applicable law and hereby recommends that Plaintiff's motion to disqualify the City Attorney's Office from representing Defendants be denied.

United States District Court

For the Northern District of California

1    The City Attorney's Office represents the City and County of San Francisco, not

2 individual employees, except under limited circumstances. Hayes cannot show the

3 existence of any of these circumstances when he undertook to sign off on a $200,000

4 federal bond for a formerly homeless client who then escaped from a treatment facility and

5 jumped bail. Hayes fails to show the existence of an attorney-client relationship between

6 himself and the San Francisco City Attorney's Office. He therefore fails to establish the first

7 prong of the test for disqualification, the existence of an attorney-client relationship, and the

8 Court need not proceed to the next prong. Even so, Hayes fails to show that the alleged

9 representation in the federal bond matter either revealed any confidential information or is

10 substantially related to the legal malpractice claim.

**Hayes claims an attorney-client relationship with the City Attorney's Office**

11    In Hayes's motion, he relates the basis for his contention that he had an attorney-

12 client relationship with the City Attorney's Office.

13    Hayes worked for the Department of Public Health as a social worker. He had a

14 client, a street person named Manny Morales, who, with Hayes' help, turned his life around.

15 Manny was even able to buy himself an old car. However, when he was stopped for a

16 minor infraction, a search revealed heroin in the trunk of the car. Manny was charged in

17 federal court, before Magistrate Judge Elizabeth LaPorte, who held a hearing to set bail.

18 Hayes contacted the San Francisco City Attorney's Office:

19    About 2001 November 28, Attorney for Manny Morales Michael Murray asked
      Hayes to appear in court to testify about the work Morales did for the
20    Department of Public Health. Declaration of Hayes at Paragraph 7. Hayes so
      testified. Id. During the court hearing, Michael Murray told Hayes that the
21    judge would allow Morales to be released to a drug treatment facility pending
      trial if Hayes continued his relationship with Morales while Morales was in the
22    facility. Declaration of Hayes at Paragraph 8. Hayes agreed to continue his
      relationship with Morales while Morales was in the facility. Declaration of
23    Hayes at Paragraph 9. Murray presented Hayes with a document entitled
      "bond." Declaration of Hayes at Paragraph 10. The document was a
24    $200,000.00 bond. Id.

25    Plaintiff Hayes was concerned that he did not want to be financially liable for
      helping Manny Morales. Id. Hayes told the Court that it was his understanding
26    that he was only agreeing to continue his relationship with Morales while
      Morales was in the facility. Declaration of Hayes at Paragraph 11. Hayes
27    received what Hayes believed to be assurances from the Court to the effect
      that Hayes was only agreeing to continue his relationship with Morales while
28    Morales was in the facility. Id. Language was added to the bond to the effect

that Hayes was to continue his relationship with Morales while Morales was in the facility. Declaration of Hayes at Paragraph 12. A true copy of the bond is attached as Exhibit One. Id.

Manny Morales was released to the treatment facility. Declaration of Hayes at Paragraph 13. Plaintiff Hayes attempted to visit Manny Morales several times. Declaration of Hayes at Paragraph 14. Security for the facility did not allow Hayes to visit Morales. Id. About eleven months after said release, Morales escaped from the facility. Declaration of Hayes at Paragraph 15. The United States Attorney's Office sent Hayes correspondence which stated that Hayes was to appear in Court and that Hayes might be liable for the $200,000.00 bond. Declaration of Hayes at Paragraph 16.

On or about 2003 May 19, Plaintiff Hayes sought legal representation from the City Attorney for the City and County of San Francisco for said proceedings. Declaration of Hayes at Paragraph 17. Hayes telephoned the City Attorney. Declaration of Hayes at Paragraph 18. Hayes spoke to a receptionist at the City Attorney's Office. Hayes told the receptionist that he worked for the Department of Public Health and that he wanted to speak to an attorney about representation in a matter. Id. Hayes told the receptionist all of the above facts. Declaration of Hayes at Paragraph 19. The receptionist told Hayes to wait and that she would get me an attorney. Declaration of Hayes at Paragraph 20.

The receptionist transferred Plaintiff Hayes to Assistant City Attorney David Newdorf. Id.[1] Newdorf introduced himself to Hayes on the telephone. Declaration of Hayes at Paragraph 21. Newdorf asked Hayes how he could help Hayes. Id. Hayes told Newdorf that he needed to find an attorney. Id. Hayes told Newdorf all of the above facts. Id. Newdorf conducted an "intake" examination. Id. Newdorf asked Hayes for his name and phone number. Id. Newdorf then questioned Hayes about his position with the City and County, Morales' position with the City and County, Hayes' relationship with Morales, and the bond proceedings. Id. Hayes responded by answering all of Newdorf's questions. Declaration of Hayes at Paragraph 22. Newdorf advised Hayes to fax Newdorf the bond and the correspondence from the United States Attorney. Declaration of Hayes at Paragraph 23. Newdorf advised Hayes to "sit tight" because the City Attorney would review the case. Id. During said phone conversation, Hayes formed the reasonable belief that the City Attorney was reviewing his case in order to properly advise Hayes and/or in order to undertake full representation of Hayes. Declaration of Hayes at Paragraph 24.

On or about 2003 May 21, Plaintiff Hayes faxed Assistant City Attorney Newdorf the documents Newdorf requested. Declaration of Hayes at Paragraph 25. The faxing included a coversheet, the bond, and the correspondence. Id. On the coversheet Hayes wrote, "Dear David, I appreciate any and all advice you can give me on this case. Sincerely Andrew P. Hayes, MSW." Id. A true copy of the coversheet is attached as Exhibit Two to the Declaration of Hayes. Id.

---

[1] In his Declaration, David Newdorf states that he does not recall receiving a phone call or having a conversation with Andrew Hayes during the week of May 19-23, 2003. May 26, 2003 was Memorial Day, a City holiday and he did not work that day. (Decl at p. 2)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3

Shortly thereafter, Assistant City Attorney David Newdorf telephoned Plaintiff Hayes and advised Hayes to fax over further documents regarding Hayes' relationship with Morales and the bond proceedings. Declaration of Hayes at Paragraph 26. Hayes did so. Id.

4
5
6
7
8

On or about 2003 May 23, a woman called Plaintiff Hayes. Declaration of Hayes at Paragraph 27. Hayes cannot recall her name. Id. She advised Hayes that she was an Assistant City Attorney from the City Attorney's Office for the City and County of San Francisco. Id. She advised Hayes that the City Attorney's Office had reviewed the papers Hayes faxed over. Id. She advised Hayes that the City Attorney was reviewing his case. Id. She advised Hayes that she had to ask him a couple of questions regarding Morales' position with the City and County and Hayes' relationship with Morales. Id. Hayes answered her questions. Id.

9
10
11
12

On or about 2003 May 26, Assistant City Attorney David Newdorf telephoned Plaintiff Hayes. Declaration of Hayes at Paragraph 28. Newdorf advised Hayes that the City Attorney reviewed Hayes' case and Hayes' paperwork. Id. Newdorf advised Hayes that the City Attorney declined to represent Hayes. Id. Newdorf advised Hayes that the reason was that Hayes was not "management." Id.

13

**Hayes claims the City Attorney's Office advised
the Department of Public Health to fire him**

14
15
16
17
18

Hayes contends that on or about October 2003, the City Attorney advised the Department of Public Health to terminate Hayes for failing to keep records of the Morales matter, failing to report the bond matter to Hayes' supervisor, maintaining a "dual relationship" with Morales, and speaking to the press about Morales. Declaration of Hayes at Paragraph 30.

19
20
21

He further claims that the Department of Public Health made the decision to terminate Hayes based on said advice from the City Attorney. Declaration of Hayes at Paragraph 31.

22
23
24
25

Finally, he alleges that the City Attorney never informed Hayes of its role in his termination. Declaration of Hayes at Paragraph 32. On 2007 March 28, Hayes learned about said role during the deposition of Department of Public Health Administrator Michael Brown. *Id.*

26
27
28

**The Department of Public health denies that the City Attorney's Office
was involved in Hayes' firing**

**United States District Court**
For the Northern District of California

1    The City Attorney's Office disputes this account. In Michael Brown's deposition,

2  attached as Ex. A to Declaration of Michael Brown, he responds to a question by Hayes'

3  attorney:

4          MR. HORNE: There's a statement in it [a document identified as DEF

5              1046] that says, "Marian Pena stated that the Manny Morales case

6              was out of her hands, and Barbara Garcia [Deputy Chief of Dept. Of

7              Public Health] was aware of it, and the City Attorney's Office was

8              instituting an investigation as to whether I had violated any rules,

9              regulations of the Department of Public health."

10          Do you know whether or not that statement is true?

11          MR. GUERRERO:   Objection, assumes facts not in evidence.

12          THE WITNESS:     It's not truthful.

13          MR. HORNE: Why do you say it's not truthful?

14          THE WITNESS:     The City Attorney's Office was not investigating. And I

15              didn't have any knowledge of this incident on 9/25.

16    (Brown Depo at 108:6-21)

17    **Hayes moves to disqualify defense counsel over two years into the lawsuit**

18    The City urges this Court to see Hayes' motion to disqualify the entire City Attorney's

19  office from defending the City and County against his wrongful termination/age

20  discrimination lawsuit for what it is – an unfounded last minute attempt to gain some tactical

21  advantage in this litigation.

22    The City contends that Hayes provides no credible justification for his waiting over

23  two years and four months from when he first sued defendants in state court to file this

24  motion.  The parties have engaged in multiple rounds of demurrers and motions to dismiss;

25  plaintiff is on his Fourth Amended Complaint; there have been several rounds of

26  interrogatories, document requests, initial disclosures and depositions; and the federal trial

27  date is rapidly approaching - and not once has Hayes raised the issue of a potential conflict

28  of interest.  Hayes' only purported justification - that he only recently learned through the

C-06-3510 REPORT AND RECOMMENDATION

1  deposition of Michael Brown that the City Attorney's Office "recommended his dismissal" –

2  is completely fabricated and without any evidentiary support.  Hayes did not attach Brown's

3  deposition to any of his filings. The City proffers it at Exhibit A of Brown's Declaration. The

4  Court reviewed the deposition transcript and finds that it does not support Hayes' claim that

5  the City Attorney's Office was involved in his termination.

**Analysis**
**Hayes invokes Cal. Rule of Professional Conduct 3-310**
**but fails to show a violation by the City Attorney's Office**

8          Hayes contends that California Rule of Professional Conduct 3-310 prohibits the City

9  Attorney's Office from defending the City and County of San Francisco against Hayes'

10 lawsuit for wrongful termination and age discrimination. He contends that his telephone

11 conversations with Deputy City Attorney David Newdorf seeking representation in the

12 federal matter regarding the $200,000 bail bond for Manny Morales established an

13 attorney-client relationship between himself and the City Attorney's Office. He contends

14 that the City Attorney's Office was obligated by this relationship to advise him regarding the

15 Morales matter and that its failure to do so resulted in his termination from employment.

16         **Hayes fails to show an attorney-client relationship**

17         The City opposes Hayes' motion to disqualify the City Attorney's Office from

18 representing it on the basis that Hayes fails to meet his burden to show the existence of an

19 attorney-client relationship between Hayes and the City Attorney's Office.

20         The prohibition against representation of a new client whose interests are adverse to

21 those of a former client is grounded in both the California State Bar Rules of Professional

22 Conduct and governing case law. See Rule 1-100 ("[T]he prohibition of certain conduct in

23 these Rules is not exclusive. Members are also bound by applicable law including . . .

24 opinions of California Courts."). Rule of Professional Conduct 3-310 (C) provides: "A

25 member shall not, without the informed written consent of each client: (1) Accept

26 representation of more than one client in a matter in which the interests of the clients

27 potentially conflict; or (2) Accept or continue representation of more than one client in a

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    matter in which the interests of the clients actually conflict."

2        Hayes cites *Miller v Metzinger* (1979) 91 Cal.App.3d 31, 40, for the proposition that

3    once he consulted the City Attorney's Office, a fiduciary relationship was created, which

4    required the City Attorney to advise him that he might have to keep records of the *Morales*

5    matter under City rules, that Hayes might have to report the bond matter to his supervisor

6    under City rules, that Morales might be considered a "client" of the City under City rules,

7    that Hayes' contacts with Morales might be considered a "dual relationship" under City

8    rules, or that Hayes might be required to refrain from speaking to the press about Morales

9    under City rules. Declaration of Hayes at ¶ 29.

10        In the *Metzinger* case, the court did not find an attorney-client relationship, but

11    remanded for further proceedings, for factual findings whether the attorney actually

12    provided legal advice, whether he took over the case file from prior counsel, and whether

13    he caused the non-compliance with the statute of limitations.

14        In the case at bar, David Newdorf consulted his supervisors regarding Hayes

15    request for representation and then advised Hayes that the City declined to represent him.

16    Hayes offers no evidence that Newdorf or anyone else offered him advice or in any way

17    undertook to represent him in the federal bond matter. In fact he hired another attorney

18                    **The City Attorney's Office represents the City**

19        The most compelling reason for denying Hayes' motion is that the City Attorney's

20    Office is bound by the Charter to represent the City and County of San Francisco, not

21    individual employees, except under specific circumstances. *Ward v. Superior Court* (1977)

22    70 Cal.App.3d 23, 29. The court in that case held that "the basis of the attorney-client

23    relationship in the case of public attorneys is not contractual, as in the case of the normal

24    attorney-client relationship, but rather is statutory or mandated by county or City charter. *Id.*

25        In *Ward*, 70 Cal.App.3d at 30-36, the court refused to find an attorney-client

26    relationship between the County Counsel's Office and the county assessor, despite the

27    County Counsel's prior representation of the assessor in both his official and personal

28    capacity.

        In *Ward*, plaintiff Philip Watson, the Los Angeles County tax assessor, sought to

United States District Court

For the Northern District of California

1   disqualify the Los Angeles County Counsel from defending members of the Los Angeles

2   Board of Supervisors with respect to a civil rights action filed against them by Watson in his

3   personal capacity.  *Id.* at 27.  Watson argued that the County Counsel's prior

4   representation of him in both his official capacity as assessor and individual capacity

5   precluded the County Counsel from representing a party adverse to him in subsequent

6   action that Watson brought in his personal capacity.  *Id.* at 27-28.  The trial court agreed,

7   disqualifying County Counsel from representation of the Board of Supervisors.

8          The Court of Appeal reversed, holding that the duty of loyalty imposed by the Rules

9   of Professional Conduct presupposes an attorney-client relationship, which the court found

10  was lacking between Watson as an individual and the County Counsel.[2]  The court found

11  that, pursuant to the Los Angeles County Charter and Government Code § 995, the County

12  Counsel was "required to represent county officers in civil actions, but only as to matters

13  wherein such officers acted in their representative capacity and within the scope of their

14  official duties."[3]  *Id.* at 32.

15         Under the San Francisco City Charter, the City Attorney's Office represents "the City

16  and County in legal proceedings with respect to which it has an interest." (Guerrero Decl. at

17  Ex.F (Charter §6.102) and Ex. G (City Attorney web page - "City Attorney does not

18  represent individuals in private legal matters.")

19         Similarly, the California State Bar has also made clear that "an attorney for a

20  governmental entity usually has only one client, namely, the entity itself, which acts through

21  constituent sub-entities and officials…"  Guerrero Decl. Ex. E (Formal Opinion 2001-156 at

22  pg. 2, 2001 WL 34029610 interpreting California Rules of Professional Responsibility 3-310

23  and 3-600 as it relates to public entity law offices like the City Attorney's Office.)

24

25

26
        [2] At issue in *Ward* was the application of Rule 4-101, which states the same prohibition
27  as Rule 3-310.  Rule 3-310 superceded Rule 4-101 on May 27, 1989.

28
        [3] Under California Government Code §995.2, a public entity may refuse to provide a
    legal defense for an employee if the public entity determines that the employee's "act or
    omission was not within the scope of his or her employment."

1    In the case at bar, it is reasonable to conclude that the City Attorney's Office

2  analyzed the information that Hayes presented to David Newdorf and concluded that the

3  City did not have an interest that required representation in the federal bond matter, and

4  therefore it declined to represent him.

5              **The Federal bond matter isn't substantially related to this lawsuit**

6    The City never represented Hayes in federal court with respect to the $200,000

7  bond. He hired private counsel. Guerrero Decl. At Ex. B and C at 261-263, 321; Brown

8  Decl. Ex. B, p. 5. He sues the City now for age discrimination by the City in terminating his

9  employment. In determining whether a "substantial relationship" exists between the former

10 and current representations, the courts must inquire into "the similarities between the two

11 factual situations, the legal questions posed, and the nature and extent of the attorney's

12 involvement with the cases." *H.F. Ahmanson & Co.*, 229 Cal. App.3d at 1455.  The

13 relationship between the prior and current representations "is measured by the allegations

14 in the complaint and by the nature of the evidence that would be helpful in establishing

15 those allegations."  *Trone v. Smith,*  621 F.2d 994, 1000 (9th Cir. 1980).

16    Further, a party seeking disqualification must show that the information presumed to

17 have been obtained from the prior representation is material to the current representation.

18 *Morrison Knudsen Corp. v. Hancock Rothert & Bunshoft, LLP* (1999) 69 Cal. App.4th 223,

19 234.

20    Consequently, Hayes cannot demonstrate that the City Attorney's Office is engaging

21 in either "subsequent adverse representation" or that the "prior representation is

22 substantially related to the current representation." The City Attorney's Office never

23 represented him in the federal bond matter and he presents only his own conclusions as

24 evidence of a substantial relationship between the federal bond matter and his subsequent

25 termination. He also fails to show that the City Attorney's Office participated in advising the

26 Department of Public Health in its decision to terminate him. The Court does not conclude

27 that the federal bond matter was not considered at all in the Health Department's decision-

28 making process, but it does conclude that Hayes fails to show a substantial relationship

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  between the City Attorney's Office involvement in the federal bond matter, which was nil,

2  and his subsequent termination.

3      Hayes therefore fails to show any justification for disqualifying the City Attorney's

4  Office from defending the City against his suit for wrongful termination and age

5  discrimination.

6                                      **Conclusion**

7      For all the above reasons, this Court finds that Hayes fails to show the existence of

8  an attorney-client relationship between himself and the San Francisco City Attorney's

9  Office. He therefore fails to establish the first prong of the test for disqualification, the

10  existence of an attorney-client relationship, and the Court need not proceed to the next

11  prong. Even so, Hayes fails to show that the alleged representation in the federal bond

12  matter either revealed any confidential information or is substantially related to his suit

13  against the City for wrongful termination. Accordingly, this Court hereby recommends to the

14  district court that Hayes's motion to disqualify the City Attorney's Office be denied.

15      Respectfully submitted,

16      DATED: June 21,  2007

17

18                                 _____
                                   JAMES LARSON
19                                 Chief Magistrate Judge

20

21

22

23

24

25      G:\JLALL\CHAMBERS\CASES\CIV-REF\06-3510\ord-deny-60.wpd

26

27

28